UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| KATHLEEN T. MURPHY-BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number: 5:13-cv-01273-JHE |
| ) | |
| ADTRAN, INC., ) | |
| ) | |
| Defendant ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kathleen T. Murphy-Brown moves to strike portions of declarations and affidavits submitted by Defendant ADTRAN, Inc. (Doc. 18). Defendant responded to the motion and filed its own motion to strike portions of Plaintiff's evidentiary submission. (Docs. 21 & 22). As explained more fully below, Murphy-Brown's objections, (doc. 18), are **OVERRULED** and ADTRAN's objections, (doc. 22), are **SUSTAINED IN PART** and **OVERRULED IN PART**.

**I. Analysis**

With the December 1, 2010 rules change to Rule 56 of the Federal Rules of Civil Procedure, it no longer appears that motions to strike submitted on summary judgment are appropriate. Revised Rule 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." The Advisory Committee Notes specify as follows:

> Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. There is no need to make a separate motion to strike. If the case goes to trial,

>failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

FED. R. CIV. P. 56, Adv. Comm. Notes, "Subdivision (c)" (2010 Amendments). *See Campbell v. Shinseki*, 546 Fed. App'x 874, 879 (11th Cir. 2013) ("Before this amendment, parties properly challenged evidence used in a summary judgment motion by filing a motion to strike. The plain meaning of these provisions show that objecting to the admissibility of evidence supporting a summary judgment motion is now a part of summary judgment procedure, rather than a separate motion to be handled preliminarily.").

The undersigned construes the parties' motions to strike as objections to "the material cited to support or dispute" the other's facts on summary judgment. Because admissibility of evidence at the summary judgment stage does not affect admissibility at trial, the parties' arguments will only be considered to the extent they address material cited for summary judgment purposes, and material successfully challenged will not be considered in the undersigned's subsequent report and recommendation.

### A. Evidence Requirements on Summary Judgment

The requirements for affidavits and declarations offered in support of or in opposition to summary judgment are outlined in Rule 56(c)(4), Fed. R. Civ. P. That rule requires that an affidavit or declaration be based "on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on matters stated." FED. R. CIV. P. 56(c)(4). Inadmissible evidence can take various specific forms, the relevant version of which are discussed below.

Inadmissible hearsay is an out-of-court statement, presented for the purpose of establishing the truth of the statement's content, that does not fall within an exception to the hearsay rule. *See* FED. R. EVID. 801, 802, 803, & 804. However, if a statement is offered for a

2

reason other than "to prove the truth of the matter asserted," it is not hearsay and the statement is admissible for that non-hearsay purpose. *See* FED. R. EVID. 801(c)(2); *Macuba v. Deboer*, 193 F.3d 1316, 1323-24 (11th Cir. 1999). Such non-hearsay purposes include merely providing context for the actual testimony of the affiant or declarant. *See, e.g.*, *United States v. Cruz*, 508 F. App'x 890, 899 (11th Cir. 2013) (holding non-testifying witness's taped statements were not hearsay because they were offered not for their truth but as context for testifying witness's statements).

Similarly inadmissible is irrelevant evidence. FED. R. EVID. 402. "Relevant evidence" is that which has any tendency to make a fact, which is of consequence in determining the action, more or less probable than it would be without the evidence. FED. R. EVID. 401. This is an extremely low bar, casting a very broad net, hemmed in primarily by Rule 403's exclusions of relevant evidence, whose probative value is outweighed by other considerations.

Rule 56(c)(4), Fed. R. Civ. P. also requires affidavits and declarations offered in support or opposition to summary judgment be based on personal knowledge. "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." FED. R. EVID. 602. Further, evidence to prove personal knowledge may consist of the witness's own testimony. *Id.* Specifically, district courts are "bound to accept as true" statements in the affidavit or declaration that it is made on personal knowledge, "unless the context demonstrate[s] otherwise." *Martin v. Rumsfeld*, 137 Fed. App'x. 324, 326 (11th Cir. 2005).

Conclusory allegations in affidavits and declarations are similarly insufficient to support a motion for or opposition to summary judgment. *See* FED. R. CIV. P. 56(c)(4) (requiring affidavits to "set out *facts* that would be admissible in evidence" (emphasis added)); *Leigh v.*

*Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000) ("[C]onclusory allegations without specific supporting facts have no probative value."); *Story v. Sunshine Foliage World, Inc.*, 120 F. Supp. 2d 1027, 1030 (M.D. Fla. 2000) (stating an affidavit is not appropriate for summary judgment "when it is a conclusory argument rather than a statement of fact").

Similarly, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Associates, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). Courts, however, "may *only* disregard an affidavit that contradicts, without explanation, previously given clear testimony," and the previous testimony "must consist of clear answers to unambiguous questions which negate the existence of any genuine issue of material fact," *Lane v. Celotex Corp.*, 782 F.2d 1526, 1532 (11th Cir. 1986) (emphasis in original). "A definite distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986). The Eleventh Circuit has also stated: "This rule is applied sparingly because of the harsh effect it may have on a party's case. Furthermore, to allow every failure of memory or variation in a witness' testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the affiant was stating the truth." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1316 (11th Cir. 2007) (internal citations omitted).

B. **Murphy-Brown's Objections (Doc. 18)**

Murphy-Brown challenges various portions of the affidavits of Jeff Fuller, Billy Hall, Sandy Leighton, and Jeremy Harris.

1. **Affidavit of Jeff Fuller**

Murphy-Brown challenges several portions of Jeff Fuller's affidavit as hearsay, conclusory, and not based on personal knowledge. (Doc. 18 at 1). First, she contends paragraph 17 of Fuller's affidavit (cited on pages 10 and 11 of ADTRAN's brief) is hearsay because it describes a statement Randy Jones made to Fuller about her that does not appear in Jones's declaration. (Doc. 18 at 1). Fuller states in paragraph 17 that Murphy-Brown and others had told him that she had considered quitting. (Doc. 14-3 at 2-3). Although these statements may not be offered to show she actually considered resigning, they are admissible to show, in support of decision-maker Fuller's belief "Murphy-Brown was not happy at work," that Fuller had been told she had considered resigning. (*Id.* at 3). For that purpose, these statements are not hearsay. This objection is **OVERRULED**.

Similarly, Murphy-Brown challenges all of paragraph 31 (cited on page 13 of ADTRAN's brief) as hearsay, double-hearsay, conclusory, and not based on personal knowledge, taking particular exception to the term "issues." (Doc. 18 at 1-2). In paragraph 31, Fuller states the HR manager met with Murphy-Brown about "her drinking issues" and that Fuller learned from him Murphy-Brown admitted to excessive drinking at the 2011 sales conference. (Doc. 14-3 at 6). Again, however, although the statements may not be offered to prove in this Court that Murphy-Brown had been drunk at the sales conference, they are admissible to show a decision-maker (Fuller) had been told about Murphy-Brown drinking at the

5

conference and believed she had been drunk there. Fuller stating what he was told is certainly based on his own personal knowledge and not conclusory.[1]  This objection is **OVERRULED**.

Murphy-Brown also challenges the first sentence of paragraph 28 as hearsay and a conclusory allegation. (Doc. 18 at 1). Paragraph 28, sentence 1 states, "Prior to the drinking episode, I had had a conversation with my boss, Senior Vice President and General Manager in the Carrier Networks Division Jay Wilson in January 2012 about Ms. Murphy-Brown." (Doc. 14-3 at 6). There does not appear to be anything in this statement that is hearsay or conclusory, but, because the description of the challenged language was so cursory (i.e, "Paragraph 28. First sentence. Hearsay and conclusory."), it is impossible to tell what exactly she challenges. That he had a conversation is certainly not hearsay or conclusory. If she is challenging his reference to the "drinking episode," that phrase is included merely for temporal context and is not evidence there was a "drinking episode." Moreover, ADTRAN does not appear to have cited this paragraph in its motion brief or reply. This objection is **OVERRULED**.

### 2. Declaration of Billy Hall

Murphy-Brown further contends the first two sentences of paragraph 9 in Billy Hall's declaration are not based on personal knowledge, are conclusory, and are based on "vagaries such as 'it seemed.'" (Doc. 18 at 2). In the first two sentences of paragraph 9, Hall states, "Murphy-Brown and Randy Jones had a very close working relationship. They spent a significant amount of time together at work." (Doc. 14-5 at 3). Because it does not appear ADTRAN relies on this paragraph in either its motion or its reply, (*see* doc. 13 (citing doc. 14-5

---

[1] Murphy-Brown is not clear exactly what her issue is with Fuller's use of the term "drinking issues," but, as that use is merely reflective of his understanding of the purpose of the meeting and is not evidence she actually has any "issues," it is not objectionable as a conclusory allegation, as hearsay, or as not based on personal knowledge.

at ¶¶ 6-8); doc. 20 (citing doc. 14-5 at ¶ 7)), there does not appear to be anything for Murphy-Brown to object to on summary judgment.  These objections are **OVERRULED**.

### 3. Affidavit of Sandy Leighton

Next, Murphy-Brown contends paragraphs 16 and 17 of Sandy Leighton's affidavit are inadmissible hearsay and not based on Leighton's personal knowledge because she "relays hearsay from another employee, Trish Perry, as well as summarizes the mental decision processes of a third party who has not provided her own testimony." (Doc. 18 at 2).  It does not appear that either of these paragraphs in Leighton's affidavit is cited in ADTRAN's motion for summary judgment, and ADTRAN cites them in its reply only to support the statement Leighton reported misconduct to Trish Perry, Fuller, and Frank Humphrey, (doc. 20 at 11).  As a result, a determination of whether her description of what Perry told her is hearsay would be hypothetical because ADTRAN has not cited the actual hearsay statements for any purpose.  To the extent the "hearsay" statements are relevant to the facts supported by ADTRAN's citation, Leighton's statements about what Perry told her are not inadmissible hearsay because they are being used as context for Leighton's statements about reporting the events to Fuller and Humphrey, not for their truth.  *See Cruz*, 508 F. App'x at 899.  To the extent the statements were offered for this purpose, Leighton would have personal knowledge of what she was told, what she decided, and what she told Fuller and Humphrey.  This objection is **OVERRULED**.

### 4. Affidavit of Jeremy Harris

Lastly, Murphy-Brown objects to several portions of Jeremy Harris's affidavit. (Doc. 18 at 2).  Specifically, she objects, as speculative, conclusory, and lacking foundation, to the last sentence of paragraph 6, in which Harris states Murphy-Brown spoke to him before she had time to see how everything would work out and before she got to know Jeff Fuller. (*Id.*) (citing doc.

14-8 at 2).  She further objects, as conclusory and lacking foundation, to the last sentence of paragraph 7, in which Harris states that Fuller gave Murphy-Brown new job duties that better reflected the job she was initially hired to perform.  (*Id.*) (citing doc. 14-8 at 2).  Finally, she objects to two sentences of paragraph 11.  (*Id.*).  In the second sentence of that paragraph, Harris states "[t]he Operations Group were actually fulfilling the requirements of packages bid out by [Murphy-Brown] and her group," (doc. 14-8 at 3), and Murphy-Brown contends there was no foundation laid for how Harris would have personal knowledge of all of the program managers' performances in fulfilling ADTRAN's contractual obligations, (doc. 18 at 2).  In the fourth sentence of that paragraph, Harris states he "observed that, during [Service Group status report] meetings, [Murphy-Brown] attempted to make certain individuals look bad in front of upper management, including, but not limited to, Bill Hall," (doc. 14-8 at 3), and Murphy-Brown contends the statement about making people look bad is speculative, vague, and conclusory, (doc. 18 at 2-3).

ADTRAN, however, has not cited most of the challenged language in its summary judgment brief or reply.  Although ADTRAN does cite these three paragraphs in its brief, (doc. 13 at 8-11), paragraphs 6 and 7 are cited for propositions to which Murphy-Brown does not object, such as stating she complained about the company and management, Fuller in particular.  (*See* doc. 13 at 8 & 10-11).  Similarly, the first challenged sentence of paragraph 11, stating "[t]he Operations Group were actually fulfilling the requirements of packages bid out by [Murphy-Brown] and her group," does not appear to support any of the language for which that paragraph is cited.  (*See* doc. 13 at 9; doc. 14-8 at 3).  As a result, these objections are merely hypothetical and, therefore, **OVERRULED**.

The second challenged sentence in Paragraph 11, on the other hand, supports the broader proposition and, therefore, indirectly supports the ultimate fact for which the paragraph is cited. (*See* doc. 13 at 9; doc. 14-8 at 3). The statement regarding making coworkers look bad is cited as an example of Murphy-Brown's "difficulty in interacting with Program Managers in the Operations Part of the Services Group," (doc. 14-8 at 3), which is cited for the statements she had "problems working with her co-workers" and "particularly . . . with Program Managers in the Operations Group," to whom "[s]he often spoke . . . in a negative, degrading and condescending manner," (doc. 13 at 9).

The statement Harris "observed . . . [Murphy-Brown] attempt[ing] to make certain individuals look bad in front of upper management" is speculative and not based on personal knowledge to the extent it implies he knew her intent was to make those individuals look bad. However, if that impermissible assumption is construed as merely a casual expression of his interpretation of the other facts in the statement and not taken literally, the statement Murphy-Brown did things in staff meetings that made or could have made others, including Billy Hall, look bad is a statement of fact that supports the broader statements she had "problems working with her coworkers." That statement is not objectionable on summary judgment. This objection is **OVERRULED**.

Regardless, even if Harris's statement were found inadmissible, ADTRAN also cites Murphy-Brown's own testimony, Fuller's affidavit, and Hall's declaration as support for the statements of fact for which it cites paragraph 11. (Doc. 13 at 9) (citing doc. 14-1 at 27-28 (103-05), 67 (263-64), & 84 (331-32); doc. 14-3 at 4; doc. 14-5 at 2-3). Although Murphy-Brown disputes whether her testimony actually supports ADTRAN's statements of fact, she does not dispute or challenge Fuller's and Hall's statements. (*See* doc. 15 at 7; doc. 18 at 1-2). As a

result, these statements of fact are sufficiently supported for purposes of ADTRAN's motion for summary judgment.

### C. ADTRAN's Objections (Doc. 22)

ADTRAN challenges (1) portions of Murphy-Brown's declaration as a "sham affidavit," irrelevant, conclusory, and lacking foundation; (2) the References Document, attached to her opposition as irrelevant, containing hearsay, and containing conclusory allegations and speculation; and (3) ADTRAN's Position Statement and Supplemental Position Statement as irrelevant.

#### 1. Murphy-Brown's Declaration

##### i. "Sham Affidavit" Objections

First, ADTRAN challenges two paragraphs from Murphy-Brown's declaration under the "sham affidavit" doctrine. (Doc. 22 at 3-4). ADTRAN first objects to paragraph 4 (cited on page 18 of Murphy-Brown's opposition to summary judgment), in which Murphy-Brown states ADTRAN has an "antiquated corporate culture, valuing and promoting men over women." (Doc. 22 at 3) (citing doc. 16-8 at 2). In her sworn deposition, Murphy-Brown previously stated ADTRAN did not promote women but she was unaware of any other evidence "that the company has systematically and intentionally done anything to prevent women from advancing because they're women." (*Id.*) (citing doc. 14-1 at 25). These two statements are not materially inconsistent. She believes ADTRAN has an antiquated corporate culture, promoting men over women but does not have any other evidence of systematic and intentional acts to prevent women from advancing. To the extent these statements do contradict each other, the phrase "systematically and intentionally done anything to prevent women from advancing" is far from unambiguous. If these statements contradict each other at all, they do not do so sufficiently to

create a clear "sham affidavit" so as to warrant application of this sparingly used doctrine. This objection is **OVERRULED**.

Second, ADTRAN objects to paragraph 6 (cited on pages 26-27 of Murphy-Brown's opposition to summary judgment), in which Murphy-Brown described a business trip to Florida and how a conflict arose between her and her coworkers. (*Id.*) (citing doc. 16-8 at 2-3). In her sworn deposition, she briefly stated that she yelled at Billy Hall during the business trip. (*Id.*) (citing doc. 14-1 at 23). These two statements, however, are also not materially contradictory. Murphy-Brown goes into more depth in her declaration, providing substantially more detail about the events before the argument while glossing over the argument itself, but the statements are otherwise consistent. In her deposition, she stated she yelled at him and accused him of lying, (doc. 14-1 at 23), and, in her declaration, she states she "called Billy and told him what Randy had conveyed," (doc. 16-8 at 3). "Telling" Hall what Jones had said could easily encompass "yelling" and "accusing." As with paragraph 4, to the extent these statements contradict each other at all, they do not do so sufficiently to create a clear "sham affidavit." This objection is **OVERRULED**.

### ii. Irrelevance Objections

Next, ADTRAN challenges the relevance of two paragraphs in Murphy-Brown's declaration. ADTRAN first objects to paragraph 5 (cited on page 21 of Murphy-Brown's opposition to summary judgment), in which Murphy-Brown stated "Program Manager Billy Hall was particularly discriminatory towards women . . . ." (Doc. 22 at 5) (citing doc. 16-8 at 2). ADTRAN contends this is irrelevant because there is no evidence Hall was a decision-maker or that Murphy-Brown complained to Human Resources about Halls allegedly discriminatory behavior. (*Id.*). Murphy-Brown counters that showing he was a decision-maker is unnecessary

11

because his allegedly discriminatory behavior is relevant to her hostile work environment claim. (Doc. 25 at 3). Even though ADTRAN does not think too much of Murphy-Brown's hostile work environment claim, (*see* doc. 13 at 23 n.5; doc. 20 at 20), that does not mean the claim was not brought and raised in response to summary judgment, (*see* doc. 1; doc. 15 at 43-44). While the evidence may ultimately be insufficient, it is not irrelevant. This objection is **OVERRULED**.

Second, ADTRAN objects to paragraph 7 (cited on page 25 of Murphy-Brown's opposition to summary judgment), in which Murphy-Brown stated she reported customer and vendor complaints, including complaints about Billy Hall, to her team. (Doc. 22 at 5) (citing doc. 16-8 at 3). ADTRAN contends this is irrelevant because Murphy-Brown has not alleged Billy Hall was a comparator. (*Id.*). Murphy-Brown counters, stating she is responding to ADTRAN's argument she was not happy at ADTRAN and frequently complained. (Doc. 25 at 4). (*See also* doc. 13 at 10 & 14) (in which ADTRAN raises these complaints as a basis for her termination). She states this evidence shows that, in many cases, she was not complaining but conveying the complaints of customers and vendors. (*Id.*). The evidence is not objectionable on the ground ADTRAN raises. This objection is **OVERRULED**.

### iii. Conclusory Allegation and Personal Knowledge Objections

The last ground on which ADTRAN challenges portions of Murphy-Brown's declaration is that they are conclusory or not based on personal knowledge. ADTRAN first objects to paragraph 4 (cited on page 18 of Murphy-Brown's opposition to summary judgment), in which Murphy-Brown states ADTRAN has an "antiquated corporate culture, valuing and promoting men over women." (Doc. 22 at 6) (citing doc. 16-8 at 2). ADTRAN contends Murphy-Brown offers no facts in support of these conclusions. (*Id.*). Murphy-Brown counters that the statement

is based on her personal experience and observations while working at ADTRAN and other companies. (Doc. 25 at 4). Although her statement is certainly based on personal experience and knowledge, that does not alone render it admissible. Her statement puts her own gloss on other evidence, taking the inferences she believes appropriate from evidence she does not directly reference in the statement. In effect, the statement amounts to inadmissible opinion evidence that merely tells the trier of fact what result to reach and is therefore unhelpful because the trier of fact is in "as good a position as the witness to draw the inference[s]" from events, actions, and communications described in other evidence. *See Hamilton v. Coffee Health Grp.*, 949 F. Supp. 2d 1119, 1128 (N.D. Ala. 2013) (citing Fed. R. Evid. 701 and quoting the discussion of that rule in *Hester v. BIC Corp.*, 225 F.3d 178, 185 (2d Cir. 2000)). At most, this statement could be useful as an expression of Murphy-Brown's perception of a discriminatory corporate culture and can be considered evidence only to the extent that perception is relevant. The Court will take all reasonable inferences in her favor on summary judgment, but it will take the inferences from the evidence itself and not as they are stated by the parties. This objection is **SUSTAINED**.

Second, ADTRAN objects to paragraph 5 (cited on page 21 of Murphy-Brown's opposition to summary judgment), in which Murphy-Brown stated "Program Manager Billy Hall was particularly discriminatory towards women . . . ." (Doc. 22 at 6) (citing doc. 16-8 at 2). ADTRAN contends Murphy-Brown offers no foundation upon which she bases her conclusion. (*Id.*). Murphy-Brown argues this statement is also based on her personal experience and observations. (Doc. 25 at 4-5). As with the language in paragraph 4, this statement may be based on personal knowledge, but it is essentially a statement of Murphy-Brown's opinion regarding Hall's motivation based on events, actions, and communications she does not reference

in the statement. Her inferences from those underlying events are not themselves evidence. This objection is **SUSTAINED**.

Lastly, ADTRAN objects to paragraph 13 (cited on page 22 of Murphy-Brown's opposition to summary judgment), in which Murphy-Brown alleged Tracy Gerdeman was so upset she called Marty Hunt, who never returned the call. (Doc. 22 at 6) (citing doc. 16-8 at 4). ADTRAN contends there is no indication this evidence is based on personal knowledge. (*Id.*). Murphy-Brown's response refers to "paragraph 5" and references her deposition testimony cited in ADTRAN's motion, which does not address the incident with Gerdeman. (*See* doc. 25 at 5) (referencing doc. 22 at 3-4). However, the declaration states it is made on personal knowledge, (doc. 16-8 at 2), which district courts are "bound to accept as true, unless the context demonstrate[s] otherwise." *Martin*, 137 Fed. App'x. at 326. As the context of the declaration testimony allows a reasonable conclusion of personal knowledge and ADTRAN does not present any basis to believe otherwise, this objection is **OVERRULED**.

### 2. The References Document

Asserting it contains irrelevant statements, hearsay, and conclusory statements, ADTRAN challenges a document attached to Murphy-Brown's response that memorializes an ADTRAN employee's account of statements made by Murphy-Brown's references. (Doc. 22 at 6-7) (citing doc. 16-3). The statements Murphy-Brown cites from the document are clearly hearsay. Specifically, she uses the document to support the statement her "former co-workers described her as ethical, good morals, high energy personality, team player, gets along well with others, responsible, dependable and trustworthy, with no history of substance abuse." (Doc. 15 at 15-16).

Murphy-Brown contends the statements are not hearsay because they appear in a document created by ADTRAN and are, therefore, admissions against interest by a party opponent. (Doc. 25 at 6) (citing Fed. R. Evid. 801(d)(2)(A), (C), & (D)). The problem with this argument is that, even if this were sufficient to get the ADTRAN employee's statement admitted, the ADTRAN employee's statement is irrelevant if the underlying statement is inadmissible. The ADTRAN employee's statement is merely that, when Murphy-Brown was hired, her references said those things about her. The material questions at issue on summary judgment involve whether she was qualified for her position or the decision-makers had discriminatory intent. Although the underlying statements regarding her personal attributes might be relevant to those questions (because they might to some degree tend to show she was qualified and not hard to work with and, therefore, that the real reason she was fired was discrimination), the fact a non-decision-making ADTRAN employee said others said those things about her before she was hired does not support the fact she actually has those attributes, that she was qualified, or that she was fired for a discriminatory reason. The ADTRAN employee's statement is only relevant if the underlying statements are admissible.

However, the document cannot be used to support the statement Murphy-Brown was actually any of the things her references said about her. Because she would be attempting to use the statement of the ADTRAN employee for its truth (that the references said those things about her) and the underlying statements of the references for their truth (that she actually is those things), it would be hearsay within hearsay, for which an exception must apply to both statements. FED. R. EVID. 805. In that situation, Murphy-Brown's argument would not apply to the references' statements recorded by the document, which Murphy-Brown would be attempting

to admit for their truth.  She does not offer any exception for the underlying statements of her references.  Accordingly, the objection to this evidence is **SUSTAINED**.

### 3. Adtran's Position Statements

Lastly, ADTRAN challenges Murphy-Brown's admission of its EEOC position statement and supplemental EEOC position statement as irrelevant because "an employer's expansion upon the reasons for a decision articulated in an EEOC position statement are insufficient to prove pretext." (Doc. 22 at 9) (citing *Hammons v. Computer Programs & Sys., Inc. (CPSI)*, No. CIV. 05-0613-WS-C, 2006 WL 3627117, at *8 (S.D. Ala. Dec. 12, 2006)).  While it may be true that consistent expansion on reasons is insufficient to prove pretext, discrepancies in a defendant's reasons over time may be sufficient to establish pretext.  *See Hammons*, No. CIV. 05-0613-WS-C, 2006 WL 3627117, at *8 (citing *Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006)).  The fact the position statements may ultimately be insufficient to show a discrepancy sufficient to establish pretext does not make them irrelevant to that question.  These objections are **OVERRULED**.

## II. Conclusion

Based on the foregoing, all of Murphy-Brown's objections, (doc. 18), are **OVERRULED** and ADTRAN's objections, (doc. 22), are **SUSTAINED IN PART** and **OVERRULED IN PART**.  Specifically, its objections to paragraphs 4 and 5 of Murphy-Brown's declaration, (doc. 16-8) and to the References Document, (doc. 16-3), are **SUSTAINED** as set out above.  The remainder of its objections are **OVERRULED**.

DONE this the 18th day of August 2015.

                                                                                _____

                                                                                **JOHN H. ENGLAND, III**
                                                                                UNITED STATES MAGISTRATE JUDGE